**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDREW MARK SABOL | : | |
| | : | |
| Appellant | : | No. 793 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 3, 2023
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000686-2022

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY PANELLA, P.J.E.:         **FILED: JULY 2, 2024**

Andrew Mark Sabol appeals from the judgment of sentence entered in the Luzerne County Court of Common Pleas on May 3, 2023, following his convictions for two counts of driving under the influence ("DUI") and a summary offense. We affirm.

On January 14, 2022, Sabol was charged by criminal information with DUI–general impairment, DUI–highest rate, and the summary offense of accidents involving damage to attended vehicle/property for an incident that occurred on December 15, 2021.

Sabol filed omnibus pretrial motions, including a petition for *habeas corpus* based on insufficient evidence, and motions to suppress evidence. The trial court subsequently granted the Commonwealth's motion to amend the information to change the charge for accidents involving damage to attended

vehicle/property to accidents involving damage to unattended vehicle/property.

On July 11, 2022, the trial court held a hearing on Sabol's omnibus pretrial motions. After taking the matter under advisement, and considering briefs submitted by both parties, the court denied suppression. On March 16, 2023, the matter proceeded to trial.

The trial court summarized the factual and procedural history as follows:

Pertinent to the current appeal, the Commonwealth introduced evidence that during the early morning hours of December 15, 2021, while in his home near the intersection of Huntsville Road and Main Street in Dallas Borough, Joseph Hand heard a crash and then a scraping noise that sounded like a vehicle trying to move. When he went outside to investigate, Hand observed a damaged utility pole, debris and fluid on the road, and the taillights of a vehicle, which was making a scraping sound as it drove west on Huntsville Road. Shortly thereafter, Officer Jason Woodard, who was on duty monitoring traffic at a nearby five-way intersection, saw a red pickup truck with a low-hanging headlight travel through the intersection and continue west along Huntsville [R]oad. When [] Hand reported the crash, Officer William Norris responded and observed the debris (including pieces suggesting that the vehicle involved was red) and a trail of fluids leading away from the scene along Huntsville Road. When Officer Norris learned that Officer Woodard had observed a red pickup with front end damage traveling west along Huntsville Road, he went to area of the five-way intersection and observed a trail of fluid. As Officer Norris proceeded along Huntsville Road he observed fluid and more debris. The trail of fluid eventually led into the driveway of 1356 Huntsville Road, at the top of which Officer Norris observed a red pickup truck parked facing a garage.

A dusk-to-dawn light was on, but no other lights were lit in the garage or the adjacent house. When Officer Norris walked through the yard to the top of the driveway to investigate, he was startled to see [Sabol] sitting near the front passenger side of the truck with his back to the garage. Officer Norris asked [Sabol] if he was okay, and [Sabol] responded that he had hit his head on

- 2 -

the windshield, but he declined medical attention. Officer Norris did not see anyone else near the truck. When conversing with [Sabol], Officer Norris observed that he smelled of alcohol, had slurred speech, was unsteady, and had glassy eyes. Officer Norris also observed that the truck had fresh front[-]end damage and was leaking fluid, and it was determined that only the driver's side airbag had deployed. Based on these observations, Officer Norris arrested [Sabol] on suspicion of driving under the influence. A breath test was administered at 3:12 a.m., showing a BAC of .241.

At the close of the Commonwealth's case, [Sabol] moved for judgment of acquittal, arguing with regard to all three Counts that the Commonwealth had failed to show that [Sabol] was driving. Following brief discussion, the [c]ourt denied the motion. Before the parties gave their closing arguments, they were provided with a written copy of the proposed jury instruction that would be read to the jury by the [c]ourt, regarding Count 2, and a copy of the proposed verdict slip for that charge. The parties agreed that both the instruction and the verdict slip were satisfactory to them.

Following closing arguments, the [c]ourt instructed the jury. When the instructions concluded, the parties indicated to the [c]ourt that they had nothing additional to offer, and the jury began its deliberations. The jury subsequently found [Sabol] guilty of Count 2, and the [c]ourt determined that [Sabol] was guilty of Counts 1 and 3.

On March 23, 2023, the Commonwealth filed a motion to amend the information in order to comply with docketing procedures used by the Luzerne County Clerk of Court, whereby asterisks are used to differentiate between 1st, 2nd, 3rd, and 4th or subsequent offenses. Although [Sabol] had not objected to the March 15, 2023 amendment of the information to reflect that both Counts 1 and 2 represented 2nd offenses in light of [Sabol]'s prior DUI, he filed an answer to the Commonwealth's March 23rd motion, denying that he had a prior DUI conviction and denying that "this [c]ourt found [Sabol] guilty of second offense DUI because the Commonwealth failed to establish a record to support that finding." Additionally, despite agreeing to the proposed verdict slip and jury instruction, which placed the BAC information in the instruction but not on the verdict slip, [Sabol] denied that the jury found him guilty of DUI, highest rate because "the verdict slip did not reference BAC, a DUI tier, or a count on the

information." [Sabol] further averred that "due to the form of the verdict slip the jury's verdict can only result in a conviction of DUI, Incapable of Safe Driving, 75 Pa.C.S. § 3802(a)(1). Specifically, the jury did not find beyond a reasonable doubt that [Sabol]'s BAC was .16% or higher or even above .10%."

The Commonwealth's March 23rd motion and [Sabol]'s answer thereto were addressed on May 3, 2023, when the parties convened for [Sabol]'s sentencing hearing. The Commonwealth reiterated its request to change the single asterisks to double asterisks. [Sabol] indicated that he was "not fighting over asterisks." Thus, the [c]ourt ordered the information to be amended to change the single asterisks at Counts 1 and 2 to double asterisks.

Turning to [Sabol]'s sentencing, the [c]ourt entertained argument from the parties, including [Sabol]'s assertion that his prior DUI, which resulted in the ARD, should not be considered a conviction for sentencing purposes under ***Commonwealth v. Chichkin***, 232 A.3d 959 (Pa. Super. 2020). Thereafter, with the benefit of a Pre-Sentence Investigation [Report] (PSI) that confirmed the prior DUI/ARD, the [c]ourt sentenced [Sabol] at Count 2 to 18 months in the Restrictive Probation Program, with the first 6 months under house arrest with electronic monitoring, plus a $ 1,500.00 fine; and a $ 300.00 fine plus costs at Count 3. [Count 1 merged with Count 2 for sentencing purposes.]

Trial Court Opinion, 9/1/23, at 2-5 (some citations omitted). This timely appeal followed.

Sabol raises the following issues on appeal:

A. Did the trial court err in denying the motion to suppress the fruit of the warrantless search of a residential property?

B. Did the trial court err in denying the motion for judgment of acquittal?

C. Did the trial court err in denying the motion to suppress the fruit of the illegal arrest?

D. Should Sabol be sentenced as a first time DUI offender?

- 4 -

Appellant's Brief, at 5.

In his first and third issues, Sabol challenges the trial court's denial of his motions to suppress.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusion drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Russell*, 938 A.2d 1082, 1090 (Pa. Super. 2007) (citation omitted).

In denying suppression, the trial court concluded as follows:

13. Officer Norris had probable cause to believe that crimes had been committed including Accidents Involving Damage to Unattended Vehicle or Property, 75 Pa.C.S.A. § 3745(a)[,] which he was investigating.

14. Officer Norris, upon observing the fluid trail leading to 1356 Huntsville Road, was at a lawful vantage point when he observed the red pick-up truck.

15. Officer Norris did not engage in any unlawful search or seizure by simply walking onto the property at 1356 Huntsville Road, as such area was an area where visitors or members of the public could be expected to go and there is no reasonable expectation of privacy in said driveway/walkway area.

16. The observations of the vehicle and [Sabol] at said time were observed in plain view by Officer Norris where he was at a lawful vantage point and their incriminating character was immediately apparent.

17. The arrest of [Sabol] was lawful as was the BAC testing of [Sabol].

18. All evidence and observations made by Officer Norris at said time are admissible at trial.

"Findings of Fact and Conclusions of Law," 12/29/22, at 2.

Preliminarily, we note the focus of Sabol's argument is that the trial court erred in its curtilage determination. *See* Appellant's Brief, at 16-17 (arguing the court failed to analyze the factors outlined in ***United States v. Dunn***, 480 U.S. 294, 301 (1987), for determining if an area is curtilage, and that application of those factors in this case supports the conclusion that the officer entered protected curtilage). In so arguing, it appears Sabol has misinterpreted the Commonwealth's argument and the trial court's findings.

Notably, the Commonwealth has never argued that the area at issue was not curtilage. Rather, the Commonwealth's position was that Officer Norris had sufficient probable cause to enter the curtilage. As such, the determination of curtilage was uncontested, and there was no need for an assessment of whether or not the area constituted curtilage.

"Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1 § 8 of the Pennsylvania Constitution." ***Commonwealth v. Gibbs***, 981 A.2d 274, 279 (Pa. Super. 2009) (citation and footnote omitted). "These constitutional protections have been extended to the curtilage of a person's home." ***Id***. (citation omitted). "Curtilage has been defined in [the]

constitutional context … by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id*.(citation omitted).

Pennsylvania courts have recognized, however, the following exception:

First, police officers have the authority to enter the curtilage for the purpose of conducting an investigation. Second, entry onto the curtilage generally is not a Fourth Amendment violation when the curtilage is used by the public.

*Commonwealth v. Eichler*, 133 A.3d 775, 784 (Pa. Super. 2016) (citations omitted).

After a careful review of the certified record, including Sabol's pre-trial motion to suppress, the transcript of the suppression hearing, as well as the trial court's findings of fact and conclusions of law, the briefs, and relevant case law, we are confident that the suppression court did not err in denying Sabol's motion to suppress. In a comprehensive opinion, the suppression court ably and methodically reviewed all the evidence presented in justifying its denial of suppression. *See* Trial Court Opinion, 9/1/23, at 6-10.

We find the trial court did not err in denying Sabol's motion to suppress based on the officer's entrance onto his property. The court's findings are supported by the record and the court clearly credited the officers' testimony. Accordingly, we affirm based on the trial court's opinion. *See id*.

In his second issue, Sabol contends the trial court erred in denying his motion for judgment of acquittal. Specifically, Sabol contends there was insufficient evidence to prove that he drove a vehicle.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa. Super. 2003). The Commonwealth may meet this burden of proving every element of the crime by utilizing only circumstantial evidence. **See Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Id**. (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder, so long as the evidence presented is utterly incapable of supporting the necessary inferences. **See id**. This Court does not independently assess credibility or otherwise assign weight to evidence on appeal. **See Commonwealth v. Kinney**, 863 A.2d 581, 584 (Pa. Super. 2004).

Sabol challenges the sufficiency of all his convictions, all of which contain driving as an element of the crime. **See** 75 Pa.C.S.A. § 3745 (pertaining to the "driver of any vehicle"); 75 Pa.C.S.A. § 3802 (a), (c) ("An individual may not drive, operate or be in actual physical control of the movement of a vehicle.").

Sabol concedes the record establishes he was under the influence of alcohol. However, he contends the evidence was insufficient to establish he

was driving, operating, or in actual physical control of the movement of a vehicle.

We recognize the only evidence Sabol had driven a vehicle is found in the police officers' testimony. It is clear from the record that Officer Woodard and Officer Norris did not witness Sabol driving a vehicle.

However, Sabol has failed to establish the officers' testimony was inherently contradictory. The trial court and jury, sitting as fact-finders, were entitled to find the officers credibly testified that Sabol's vehicle hit a parked vehicle; Officer Woodard observed a red pickup truck with a low-hanging headlight traveling nearby; Officer Norris followed a fluid trail from the scene of the accident to Sabol's residence where his vehicle was parked; Sabol's vehicle, a red pickup truck, showed damage consistent with the accident that had just occurred; and Sabol was under the influence when the officers encountered him at his residence leaning on his vehicle; no one else was present or near the vehicle. Based on the record before us, we cannot conclude the officers' testimony was so unreliable or as a matter of law that it could not support circumstantial evidence of the driving element of Sabol's convictions.

Viewed in the light most favorable to the Commonwealth, we are satisfied that this evidence was sufficient to support Sabol's convictions for DUI beyond a reasonable doubt. *See Bruce*, 916 A.2d at 661. Accordingly, Sabol's second issue is without merit.

In his final issue, Sabol contends he should have been sentenced as a first time DUI offender pursuant to *Chichkin*.

"Section 3804 [of the Motor Vehicle Code] sets forth mandatory minimum sentence terms for first, second, and subsequent DUI offenses." *Chichkin*, 232 A.3d at 963. Section 3806 of the Motor Vehicle Code, in turn, defines "prior offenses" as follows:

> **(a) General rule**.—Except as set forth in subsection (b), the term "prior offense" as used in this chapter shall mean any conviction for which judgment of sentence has been imposed, adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition before the sentencing on the present violation for any of the following:
>
> > (1) an offense under section 3802 (relating to driving under influence of alcohol or controlled substance)[.]

75 Pa. C.S.A. § 3806(a)(1).

As Sabol highlights, *Chichkin* held that "the particular provision of 75 Pa. C.S.A. § 3806(a), which defines a prior acceptance of ARD in a DUI case as a 'prior offense' for DUI sentencing enhancement purposes … [is] unconstitutional." *Chichkin*, 232 A.3d at 971. However, this Court expressly overruled *Chichkin* in a pair of decisions, i.e., *Commonwealth v. Moroz*, 284 A.3d 227 (Pa. Super. 2022) (*en banc*) and *Commonwealth v. Richards*, 284 A.3d 214 (Pa. Super. 2022) (*en banc*). *Richards* stated in no uncertain terms:

> We now hold that the portion of Section 3806(a), which equates prior acceptance of ARD to a prior conviction for purposes of

imposing a Section 3804 mandatory minimum sentence, passes constitutional muster.

***Richards***, 284 A.3d at 220.

Sabol concedes that ***Chichkin*** was overruled. However, he points out that the Pennsylvania Supreme Court has since affirmed ***Chichkin*** in ***Commonwealth v. Verbeck***, 290 A.3d 260 (Pa. 2023) (per curiam). While Sabol correctly acknowledges that, as a per curiam decision, ***Verbeck*** does not have precedential value, he indicates that ***Verbeck*** offers him "hope that his earlier ARD admission should not count as a prior DUI conviction for sentencing purposes." Appellant's Brief, at 30.

Nevertheless, this Court's decision in ***Richards*** remains the precedent we must follow, and, under that controlling precedent, the sentencing court did not err by considering Sabol's ARD as a prior offense for sentencing purposes on his DUI conviction. [1]

As we find none of Sabol's issues merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

_____

[1] We acknowledge the Pennsylvania Supreme Court has granted reargument on this issue. ***See Commonwealth v. Richards***, 294 A.3d 300 (Pa. 2023). However, this does not affect our disposition because this Court's decision remains binding precedent unless and until the Pennsylvania Supreme Court rules otherwise. There is no question that Sabol has preserved this issue for future review by the Supreme Court.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/02/2024

COMMONWEALTH OF PENNSYLVANIA
11TH JUDICIAL DISTRICT

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS |
| | :       OF LUZERNE COUNTY |
| v. | : |
| | : |
| | :      CRIMINAL DIVISION |
| ANDREW MARK SABOL, | : |
|           Defendant | :      NO.  686 OF 2022 |

### OPINION

BY:   THE HONORABLE DAVID W. LUPAS

## I.   FACTS AND PROCEDURAL HISTORY:

On December 15, 2021, the Defendant, Andrew Sabol, was arrested on suspicion of driving under the influence, and he was subsequently charged with violations of the Motor Vehicle Code.[1]

On April 22, 2022, the Defendant sought to suppress fruit of a "warrantless search" and an "unlawful arrest."  Omnibus Pre-Trial Motion filed 4/22/2022 at 7, 9.  The Defendant's pre-trial motion was taken under advisement following a July 11, 2022 hearing, and was subsequently denied on December 29, 2022.

On March 14, 2023, the Commonwealth filed a motion to amend Counts 1 and 2 from "1st offense" to "2nd offense," based on a prior DUI that occurred on or about March 20, 2016, for which the Defendant received Accelerated Rehabilitative Disposition (ARD).  Motion filed 3/14/2023 at ¶ 3, citing *Commonwealth v. Moroz*, 284 A.3d 227, 233 (Pa. Super. 2022) (*en banc*).

---

[1] The Defendant was initially charged as follows: Count 1 DUI general impairment/incapable of safe driving, 75 Pa. C.S.A. 3802(a)(1), 1st offense (misdemeanor); Count 2 DUI highest rate of alcohol (BAC .16+), 75 Pa. C.S.A. 3802(c), 1st offense (misdemeanor); Count 3 accident involving damage to attended vehicle/property, 75 Pa. C.S.A. 3743(a), (misdemeanor 3).  Information filed 3/29/2022.  Count 3 of the Information was subsequently amended to reflect a violation of 75 P.C.S.A. 3745(a), damage to *unattended* vehicle/property, a summary offense.  Order of Court dated 7/11/2022.

CLERK OF COURTS CRIMINAL
LUZ CNTY SEP1'23PM4:11

The Defendant did not file an answer to the Commonwealth's motion, or otherwise object to amending Counts 1 and 2 to reflect "2nd offense." An amended information was thus filed on March 15, 2023, with the language "2nd Off" added to Counts 1 and 2.[2]

A jury was selected and sworn on March 15, 2023, and the Defendant's trial commenced on March 16, 2023. Pertinent to the current appeal, the Commonwealth introduced evidence that during the early morning hours of December 15, 2021, while in his home near the intersection of Huntsville Road and Main Street in Dallas Borough, Joseph Hand heard a crash and then a scraping noise that sounded like a vehicle trying to move. N.T. 3/16/2023 at 13. When he went outside to investigate, Hand observed a damaged utility pole, debris and fluid on the road, and the taillights of a vehicle, which was making a scraping sound as it drove west on Huntsville Road. _Id_. at 14-16. Shortly thereafter, Officer Jason Woodard, who was on duty monitoring traffic at a nearby five-way intersection, saw a red pickup truck with a low-hanging headlight travel through the intersection and continue west along Huntsville road. _Id_. at 20-21. When Joseph Hand reported the crash, Officer William Norris responded and observed the debris (including pieces suggesting that the vehicle involved was red) and a trail of fluids leading away from the scene along Huntsville Road. _Id_. at 37-38. When Officer Norris learned that Officer Woodard had observed a red pickup with front end damage traveling west along Huntsville Road, he went to area of the five-way intersection and observed a trail of fluid. _Id_. at 38-39. As Officer Norris proceeded along Huntsville Road he observed fluid and more debris. _Id_. at 39. The trail of fluid eventually led into the driveway of 1356 Huntsville Road, at the top of which Officer Norris observed a red pickup truck parked facing a garage. _Id_. at 39-40. A dusk-to-dawn light was on, but no other lights were

---

[2] The amendment did not alter the grading of Count 1. See 75 Pa.C.S.A. § 3803(a)(1). Count 2, however, became a misdemeanor 1. See 75 Pa.C.S.A. § 3803(b)(4).

lit in the garage or the adjacent house. *Id*. When Officer Norris walked through the yard to the top of the driveway to investigate, he was startled to see the Defendant sitting near the front passenger side of the truck with his back to the garage. *Id*. at 41. Officer Norris asked the Defendant if he was okay, and the Defendant responded that he had hit his head on the windshield, but he declined medical attention. *Id*. at 42. Officer Norris did not see anyone else near the truck. *Id*. When conversing with the Defendant, Officer Norris observed that he smelled of alcohol, had slurred speech, was unsteady, and had glassy eyes. *Id*. at 43. Officer Norris also observed that the truck had fresh front end damage and was leaking fluid, and it was determined that only the driver's side airbag had deployed. *Id*. at 42, 56. Based on these observations, Officer Norris arrested the Defendant on suspicion of driving under the influence. *Id*. at 45. A breath test was administered at 3:12 a.m., showing a BAC of .241. N.T. at 51.

At the close of the Commonwealth's case, the Defendant moved for judgment of acquittal, arguing with regard to all three Counts that the Commonwealth had failed to show that the Defendant was driving. *Id*. at 63. Following brief discussion, the Court denied the motion. *Id*. at 63-65. Before the parties gave their closing arguments, they were provided with a written copy of the proposed jury instruction that would be read to the jury by the Court, regarding Count 2, and a copy of the proposed verdict slip for that charge. *Id*. at 69-70.[3] The parties agreed that both the instruction and the verdict slip were satisfactory to them. *Id*. at 70.

Following closing arguments, the Court instructed the jury.[4] When the instructions concluded, the parties indicated to the Court that they had nothing additional to offer, and the jury

---

[3] The Court was tasked with addressing Counts 1 and 3.

[4] The instruction given to the jury regarding Count 2, the charge they were tasked with considering, was identical to the proposed instruction provided to, and agreed upon, by the parties. N.T. 3/16/2023 at 89-91.

began its deliberations. *Id*. at 94, 96. The jury subsequently found the Defendant guilty of Count 2, and the Court determined that the Defendant was guilty of Counts 1 and 3. *Id*. at 98, 104.

On March 23, 2023, the Commonwealth filed a motion to amend the information in order to comply with docketing procedures used by the Luzerne County Clerk of Court, whereby asterisks are used to differentiate between 1st, 2nd, 3rd, and 4th or subsequent offenses. See Motion filed 3/23/2023, Attachment C.[5] Although the Defendant had not objected to the March 15, 2023 amendment of the information to reflect that both Counts 1 and 2 represented 2nd offenses in light of the Defendant's prior DUI, he filed an answer to the Commonwealth's March 23rd motion, denying that he had a prior DUI conviction and denying that "this Court found Defendant guilty of second offense DUI because the Commonwealth failed to establish a record to support that finding." Defendant's Answer filed 3/29/2023 at ¶ 2. Additionally, despite agreeing to the proposed verdict slip and jury instruction, which placed the BAC information in the instruction but not on the verdict slip, the Defendant denied that the jury found him guilty of DUI, highest rate because "the verdict slip did not reference BAC, a DUI tier, or a count on the information." *Id*. (citing *Alleyne v. United States*, 570 U.S. 99 (2013); *Commonwealth v. Hopkins*, 117 A.3d 247, 258 (Pa. 2015)). The Defendant further averred that "due to the form of the verdict slip the jury's verdict can only result in a conviction of DUI, Incapable of Safe Driving, 75 Pa.C.S. § 3802(a)(1). Specifically, the jury did not find beyond a reasonable doubt that Defendant's BAC was .16% or higher or even above .10%." *Id*.[6]

---

[5] A review of the record reflects that when the information was amended on March 15, 2023 to change the DUI charges from 1st offense to 2nd offense, the single asterisk used to designate 1st offense was not changed to the double asterisk needed to designate 2nd offense.

[6] Although the Defendant does not raise the verdict slip allegation on appeal, we emphasize that he specifically agreed that the information regarding his BAC would be made part of the jury instruction, not the verdict slip. As agreed to by the parties, the jury was instructed that in order

The Commonwealth's March 23rd motion and the Defendant's answer thereto were addressed on May 3, 2023, when the parties convened for the Defendant's sentencing hearing. The Commonwealth reiterated its request to change the single asterisks to double asterisks. N.T. 5/3/2023 at 2, 4. The Defendant indicated that he was "not fighting over asterisks." *Id*. at 3. Thus, the Court ordered the information to be amended to change the single asterisks at Counts 1 and 2 to double asterisks. *Id*. at 5.

Turning to the Defendant's sentencing, the Court entertained argument from the parties, including the Defendant's assertion that his prior DUI, which resulted in the ARD, should not be considered a conviction for sentencing purposes under *Commonwealth v. Chichkin*, 232 A.3d 959 (Pa. Super. 2020). N.T. 5/3/2023 at 6. Thereafter, with the benefit of a Pre-Sentence Investigation (PSI) that confirmed the prior DUI/ARD, the Court sentenced the Defendant at Count 2 to 18 months in the Restrictive Probation Program, with the first 6 months under house arrest with electronic monitoring, plus a $1,500.00 fine; and a $300.00 fine plus costs at Count 3.[7]

On June 2, 2023, the Defendant filed a notice of appeal from his judgment of sentence and from the denial of his suppression requests. Notice of Appeal filed 6/2/2023. The Defendant was

_____

to find the Defendant guilty of DUI highest rate of alcohol (BAC . 16+), it would have to find the following beyond a reasonable doubt:

> First, that the defendant imbibed alcohol; second, that the defendant then drove, operated, or was in actual physical control of the movement of a vehicle upon a highway or a traffic way[;] … [a]nd third, that within two hours after driving, operating, or in actual physical control, the alcohol concentration in the defendant's blood or breath was .16 percent or above.

N.T. 3/16/2023 at 89-90. Juries are presumed to follow the instructions given to them, so we may presume that in finding the Defendant guilty, the jury determined that within two hours after driving, operating, or being in actual physical control, the alcohol concentration in the Defendant's blood or breath was .16 percent or above. *Commonwealth v. Purnell*, 259 A.3d 974, 986 (Pa. 2021).

[7] Count 1 merged with Count 2 for sentencing purposes. Order of Court dated 5/3/2023.

directed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and did so on in a timely manner, raising the following allegations of error:

1. The Court erred by denying Sabol's motion to suppress the fruit of a warrantless search.

2. The Court erred by denying Sabol's motion to suppress the fruit of an illegal arrest.

3. The Court erred by denying Sabol's motion for judgment of acquittal.

4. The verdict is not supported by sufficient evidence concerning the element of driving/actual physical control over the movement of a vehicle and/or driving on a highway or trafficway that is necessary to support convictions pursuant to Sections 3745 and 3802 of the Vehicle Code.

5. Sabol's sentence is illegal because a jury did not decide whether the enhanced sentencing penalties pursuant to Section 3804 of the Vehicle Code applied to this case.

6. The Court erred by sentencing Sabol as a second offense DUI because he did not have a prior DUI conviction.

7. The Court erred by sentencing Sabol as a second offense DUI because the Commonwealth failed to establish at trial or during the sentencing hearing that Sabol had a prior DUI conviction.

Rule 1925(b) Statement filed 6/7/2023.

## II. **LAW AND DISCUSSION**:

Turning to the Defendant's assertions that this Court erred in its suppression ruling, the record reflects that the Defendant sought suppression of the evidence obtained from the warrantless entry onto 1356 Huntsville Road, arguing that since Officer Norris "had to stand on private property to observe/obtain evidence he alleges was in plain view … Norris was a trespasser and did not view the damage nor Sabol from a lawful vantage point as required by the plain view doctrine." Defendant's Pre-Trial Motion filed 4/22/2022 at 8.

The Commonwealth countered that Officer Norris had the authority to enter onto the Defendant's property during his investigation of the crash, that he restricted his movements to areas where visitors could be expected to go, and that his observations were all made from a lawful vantage point, therefore, the plain view exception did apply, and the evidence should not be suppressed. Commonwealth's Brief in Opposition to Defendant's Omnibus Pre-Trial Motion filed 7/21/2022, Discussion ¶ 2 (citing *Commonwealth v. Eichler*, 133 A3d 777 (Pa. Super. 2016), appeal denied, 161 A.3d 791 (Pa. 2016).

The Defendant responded that *Eichler* had been overruled by *Loughnane*, *supra*, and he continued to dispute the nature of Officer Norris's vantage point when he discovered the Defendant and the damage to the truck. Defendant's Reply Brief in Support of Granting the Omnibus Pre-Trial Motion filed 7/27/2022.

At the suppression hearing conducted on July 11, 2022, the Court heard testimony from Joseph Hand, and Officers Woodard and Norris, which, in pertinent part, mirrored what was presented at trial, as set forth above. See N.T. 7/11/2022 at 4-8, 10-12, 14-20, 27-28, 31. Following the presentation of testimony and argument by the parties, this Court assessed the credibility of the witnesses and the weight to be given their testimony, and determined that the Commonwealth had met its burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the Defendant's rights.[8] This determination was not in error.

---

[8] "Pa.R.Crim.P. 581 provides that '[t]he Commonwealth shall have the burden ... of establishing that the challenged evidence was not obtained in violation of the defendant's rights.' Pa.R.Crim.P. 581(H). Specifically, the Commonwealth has the burden of "establish[ing] by a preponderance of the evidence that the evidence was properly obtained." *Commonwealth v. Smith*, 285 A.3d 328, 332 (Pa. Super. 2022) (citing *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (citation omitted).

7

As the Pennsylvania Supreme Court has explained:

> Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy. An expectation of privacy exists if a person has a subjective expectation of privacy that society is willing to recognize as legitimate and reasonable. Where there exists a reasonable expectation of privacy, Article I, Section 8 and the Fourth Amendment generally require police to obtain a warrant, issued by a neutral and detached magistrate and founded upon probable cause, prior to conducting a search or seizure of a person and/or a person's property, unless one of the few well delineated exceptions apply.

*Commonwealth v. Loughnane*, 643 Pa. 408, 420, 173 A.3d 733, 741 (2017).[9] See also *Commonwealth v. Heidelberg*, 267 A.3d 492, 502 (Pa. Super. 2021) (*en banc*) (citation omitted), appeal denied, 279 A.3d 38 (Pa. May 25, 2022) ("As a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'"). The "well delineated exceptions" to the warrant requirement include 'the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception ... the stop and frisk exception, and the search incident to arrest exception.'" *Commonwealth v. McMahon*, 280 A.3d 1069, 1072 (citing *Commonwealth v. Simonson*, 148 A.3d 792, 797 (Pa. Super. 2016)).

The plain view exception permits a warrantless search and seizure when: (1) an officer views the evidence from a lawful vantage point; (2) it is immediately apparent to him that the evidence is incriminating; and (3) the officer has a lawful right of access to the evidence. *Commonwealth v. Davis*, 287 A.3d 467, 471 (Pa. Super. 2022). As noted above, in disputing the applicability of the plain view exception in this case, the Defendant limited his argument to the

---

[9] The constitutional protections guaranteeing individuals freedom from unreasonable searches and seizures apply to the inside of a home, as well as the curtilage surrounding it. *Commonwealth v. Simmen*, 58 A.3d 811, 815 (Pa. Super. 2012); *Commonwealth v. Gibbs*, 981 A.2d 274, 279-280 (Pa. Super. 2009).

assertion that the first prong was not met, contending that Officer Norris did not observe the evidence from a lawful vantage point. Defendant's Pre-Trial Motion filed 4/22/2022 at 8. A review of the record clearly shows, however, that the evidence presented to the Court demonstrated that Officer Norris made his observations from a lawful vantage point.

The credible testimony of Officers Woodard and Norris explained their response to the 911 call placed by Joseph Hand, their observations at and near the scene of the accident, and Officer Norris's discovery of the trail of fluids leading from Huntsville Road into the driveway at 1356 Huntsville Road, where a red pickup truck was parked. Officer Norris observed the trail of fluid and the pickup truck from the vantage point of the public road, therefore no privacy issues arose. Based on these observations, coupled with Officer Norris's recent observations of red vehicle parts and a trail of fluid leading away from the accident scene on Huntsville Road, he continued his investigation by entering onto the property at 1356 Huntsville Road. Officer Norris was permitted to make such entry onto the property in the course of his investigation. See _Eichler_ 133 A.3d at 784 (police officers had the authority to enter the curtilage of a property for purposes of conducting an investigation).[10]

_____

[10] With regard to the Defendant's assertion that _Eichler_ was overruled by _Loughnane_, we disagree. In _Loughnane_, police were investigating a hit-and-run homicide involving a truck. Days after the incident, a witness identified a truck in Loughnane's driveway. Police seized the truck without a warrant, discovering evidence that connected the truck to the scene of the crime and, therefore, pointing to Loughnane's involvement. See _Loughnane_, 643 Pa. at 410-412, 173 A.3d at 735-36. The trial court suppressed the evidence obtained from the search of the truck, and the matter eventually reached the Pennsylvania Supreme Court, which held that the automobile exception to the warrant requirement recognized by _Commonwealth v. Gary_, 625 Pa. 183, 91 A.3d 102 (2014) does not apply to vehicles parked in private driveways. _Id._, 643 Pa. at 411, 733 A.3d at 735. _Loughnane_ cited _Eichler_, and other cases, as examples of established legal precedent requiring that curtilage determinations be made on a "case-by-case multi-factoral basis." _Id._ 643 Pa. at 418 fn. 7, 173 A.3d at 740 fn. 7. _Loughnane_ did not address the investigative intentions of the police as a reason to access property in the first instance, nor did it address whether the investigation permitted the police to have access to the driveway involved. As the Superior Court has noted,

Thus it was from a lawful vantage point that Officer Norris encountered the Defendant and observed the damage to the exterior of the truck. Accordingly, the Defendant's allegation of error in this regard does not entitle him to appellate relief.[11] For these reasons, the Defendant's judgment of sentence should not be disturbed on the grounds asserted in his first or second allegations of error.

The Defendant's third allegation on appeal asserts that the Court erred by denying his motion for judgment of acquittal. Rule 1925(b) Statement filed 6/7/2023. "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Richard*, 150 A.3d 504, 514 (Pa. Super. 2016) (citing *Commonwealth v. Abed*, 989 A.2d 23, 26 (Pa. Super. 2010)). As such, we will discuss the Defendant's third allegation of error in conjunction with his fourth allegation of error, which asserts that the verdicts were not supported by sufficient evidence "concerning the element of driving/actual physical control over the movement of a vehicle and/or driving on a highway or trafficway that is necessary to support convictions pursuant to Sections 3745 and 3802 of the Vehicle Code." Rule 1925(b) Statement filed 6/7/2023 at ¶ 4.

> Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact

---

however, "those circumstances *were* addressed in detail by *Eichler*, *supra*. See *Commonwealth v. Chesney*, 196 A.3d 253, 258-259 (Pa. Super. 2018).

[11] We note that the Defendant's suppression request additionally asserted that the automobile exception to the warrant requirement did not apply to this matter because the Defendant's truck was parked in a residential driveway. Defendant's Omnibus Pre-Trial Motion filed 4/22/2022 at 9 (citing *Loughnane*, *supra*). This Court's suppression ruling is supported by the plain view exception, however, thus we need not discuss the automobile exception. *McMahon*, 280 A.3d at 1073-1074 (A search involving a vehicle may be justified under the plain view exception, without regard to the applicability of the automobile exception).

while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Teems*, 74 A.3d 142, 144-145 (Pa. Super. 2013) (citation omitted).

Here, the Defendant's judgment of acquittal and his sufficiency of the evidence claim challenged all three crimes charged, each of which contain driving as an element.[12] The Defendant's motion specifically challenged the driving element of the crimes only, and his sufficiency claim challenges whether the Defendant was driving, and if so, if he did so on a trafficway or highway. N.T. 3/16/2023 at 63; Rule 1925(b) Statement filed 6/7/2023.[13] The

---

[12] Section 3802(a)(1) of the Vehicle Code directs that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle. 75 Pa.C.S.A. § 3802(a)(1). Section 3802(c) directs that:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(c). Section 3745 directs that:

> The driver of any vehicle which collides with or is involved in an accident with any vehicle or other property which is unattended resulting in any damage to the other vehicle or property shall immediately stop the vehicle at the scene of the accident or as close thereto as possible and shall then and there either locate and notify the operator or owner of the damaged vehicle or other property of his name, address, information relating to financial responsibility and the registration number of the vehicle being driven or shall attach securely in a conspicuous place in or on the damaged vehicle or other property a written notice giving his name, address, information relating to financial responsibility and the registration number of the vehicle being driven and shall without unnecessary delay notify the nearest office of a duly authorized police department. Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S.A. § 3745(a).

[13] Although Section 3802 has no specific "highway" or "trafficway" element in its statutory language, Section 3101(b) of the Motor Vehicle Code states that Chapter 38, as a whole, relating to driving after imbibing alcohol or using drugs, applies to the highways and trafficways. 75 Pa.C.S.A. § 3101(b). A "highway" is defined as:

> The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular

11

Defendant does *not* contest the sufficiency of the evidence that he was under the influence of alcohol. As such, we limit our discussion on appeal to whether the Commonwealth presented sufficient evidence that the Defendant drove on a trafficway or highway.

"An eyewitness is not required to establish that a defendant was driving, operating, or was in actual physical control of a motor vehicle. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." <u>Commonwealth v. Johnson</u>, 833 A.2d 260, 263 (Pa. Super. 2003). See also <u>Commonwealth v. Whitmire</u>, 2023 PA Super 137, 2023 WL 4834616 (Pa. Super. July 28, 2023) (citing <u>Commonwealth v. Young</u>, 904 A.2d 947 (Pa. Super. 2006)); <u>Commonwealth v. Gooseby-Byrd</u>, 188 A.3d 1186, 1188 (Pa. Super. 2018).

Here, as set forth above, the Commonwealth introduced credible circumstantial evidence sufficient for the jury and this Court, as fact-finders, to conclude that the Defendant was the driver of the truck that struck the pole, and that he drove the truck on Huntsville Road, a highway or trafficway. As such, the Defendant's judgement of sentence should not be disturbed on appeal on the grounds suggested by his third or fourth allegation of error.

The Defendant's fifth allegation of error asserts that his sentence is illegal because a jury did not decide whether the enhanced sentencing penalties pursuant to Section 3804 of the Vehicle Code applied to this case. Rule 1925(b) Statement filed 6/7/2023. Section 3804 directs in pertinent part as follows:

---

travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

75 Pa.C.S.A. § 102. A "trafficway" is defined as "[t]he entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom." 75 Pa.C.S.A. § 102.

12

(c) Incapacity; highest blood alcohol; controlled substances.-- ... [A]n individual who violates section 3802(c) ... shall be sentenced as follows:

> (1) For a first offense, to:
>> (i) undergo imprisonment of not less than 72 consecutive hours;
>> (ii) pay a fine of not less than $1,000 nor more than $5,000;
>> (iii) attend an alcohol highway safety school approved by the department; and
>> (iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.
> (2) For a second offense, to:
>> (i) undergo imprisonment of not less than 90 days;
>> (ii) pay a fine of not less than $1,500;
>> (iii) attend an alcohol highway safety school approved by the department; and
>> (iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

75 Pa.C.S.A. § 3804(c). Additionally, Section 3806 directs in pertinent part as follows:

> (a) General rule.--Except as set forth in subsection (b), the term "prior offense" as used in this chapter shall mean ... acceptance of Accelerated Rehabilitative Disposition ... before the sentencing on the present violation for any of the following:
>> (1) an offense under section 3802 (relating to driving under influence of alcohol or controlled substance);
>
> ...
> (b) Timing.--
>> (1) For purposes of ... Section 3804 (relating to penalties) ... , the prior offense must have occurred:
>>> (i) within 10 years prior to the date of the offense for which the defendant is being sentenced; or
>>> (ii) on or after the date of the offense for which the defendant is being sentenced.
>> (2) The court shall calculate the number of prior offenses, if any, at the time of sentencing.

75 Pa.C.S.A. § 3806. Thus, a defendant who accepted ARD for a prior DUI offense is considered a second-time offender under the Section 3804 penalty provisions, and faces an increased minimum sentence.

In *Apprendi v. New Jersey*, the United States Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). *Alleyne*, reached the same conclusion for facts that increase the mandatory minimum sentence to which a defendant is exposed. *Alleyne*, 570 U.S. at 116, 133 S.Ct. at 2163; *Commonwealth v. Williams*, 2023 PA Super 147 (Pa. Super. Ct. Aug. 4, 2023); *Commonwealth v. Riggle*, 119 A.3d 1058, 1064 (Pa. Super. 2015).

> In *Commonwealth v. Chichkin*, the Superior Court concluded that:

> [B]ecause Appellants' prior acceptances of ARD do not constitute convictions "cloaked in all the constitutional safeguards," we conclude they are a "fact" that, pursuant to *Alleyne*, *Apprendi*, and their progeny, must be presented to the fact finder and determined beyond a reasonable doubt before a trial court may impose a mandatory minimum sentence under Section 3804.

*Chichkin*, 232 A.3d at 968 (footnote omitted). *Chichkin*, however, was expressly overruled by *Commonwealth v. Richards*, 284 A.3d 214 (Pa. Super. 2022) (*en banc*), appeal granted, 294 A.3d 300 (Pa. 2023) and *Moroz*, 284 A.3d at 233, which held that "the portion of Section 3806(a), which equates prior acceptance of ARD to a prior conviction for purposes of imposing a Section 3804 mandatory minimum sentence, passes constitutional muster," and therefore, "a defendant's prior acceptance of ARD fits within the limited 'prior conviction' exception set forth in *Apprendi* and *Alleyne*." *Richards*, 284 A.3d at 220; *Moroz*, 284 A.3d at 233.

Although *Chichkin's* holding has since been affirmed *per curiam* by an equally divided Pennsylvania Supreme Court in *Commonwealth v. Verbeck*, —— Pa. ——, 290 A.3d 260 (2023), that case has no precedential value, and *Richards* and *Moroz* are currently the controlling law such that ARD counts as a prior offense for purposes of sentencing for a subsequent DUI offense. *Commonwealth v. Corson*, 2023 PA Super 122, fn. 4 (Pa. Super. June 11, 2023) (citing *Commonwealth v. Mosley*, 114 A.3d 1072, 1082 (Pa. Super. 2015) ("When a judgment of sentence

14

is affirmed by an equally divided court, ... no precedent is established and the holding is not binding on other cases."); *Hummel*, 295 A.3d at 720, fn. 1.

As such, the Defendant's prior acceptance of ARD fit within the limited 'prior conviction' exception set forth in *Apprendi* and *Alleyne*, and his sentence is not rendered illegal because a jury did not decide whether the enhanced sentencing penalties pursuant to Section 3804 of the Vehicle Code applied to this case. *Richards*, 284 A.3d at 220; *Moroz*, 284 A.3d at 233.

The sixth and seventh allegations raised by the Defendant on appeal assert that this Court erred by sentencing the Defendant as a second offense DUI because he did not have a prior DUI conviction, and because the Commonwealth failed to establish at trial or during the sentencing hearing that Sabol had a prior DUI conviction. Rule 1925(b) Statement filed 6/7/2023.

As the record reflects, the Court sentenced the Defendant with the benefit of a PSI that confirmed that the Defendant had a DUI in 2016, for which he received ARD. As we explained above with regard to the Defendant's fifth allegation of error, the ARD is considered a prior conviction for sentencing purposes, and thus it was not necessary for the Commonwealth to submit that issue to the jury at trial. As such, the Defendant's judgment of sentence should not be disturbed on these grounds.

For the foregoing reasons, the Defendant's judgment of sentence should be affirmed on appeal.

END OF OPINION